**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEMCRUDE, L.P., <u>et</u> <u>al.</u>, | ) | Case No. 08-11525 (BLS) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |
| _____ | ) | |
| | ) | |
| J. ARON & COMPANY, | ) | Adv. Proc. No. 09-50038 |
| | ) | |
| Plaintiff, | ) | Related to Docket Nos. 358, 380, 382, |
| | ) | 383, 385, 386, 391, 419, 427, and 428 |
| v. | ) | |
| | ) | |
| SEMGROUP, L.P., <u>et</u> <u>al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| BP OIL SUPPLY COMPANY, <u>et</u> <u>al.</u>, | ) | Adv. Proc. No. 09-50105 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 328, 357, 359, |
| | ) | 360, 361, 362, 373, 402, 418, 419, |
| v. | ) | and 423 |
| | ) | |
| SEMGROUP, L.P., <u>et</u> <u>al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| CONOCOPHILLIPS COMPANY, | ) | Adv. Proc. No. 08-51457 |
| | ) | |
| Plaintiff, | ) | Related to Docket Nos. 214, 223, 231, |
| | ) | 232, 242, 243, and 251 |
| v. | ) | |
| | ) | |
| SEMCRUDE, L.P., <u>et</u> <u>al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| PLAINS MARKETING, L.P., et al., | ) | Adv. Proc. No. 09-51003 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 216, 241, 252, |
| | ) | 253, 254, 256, 293, 298, 304, 319, |
| v. | ) | 320, 321, 337, 347, 354, and 355 |
| | ) | |
| BANK OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ANSTINE & MUSGROVE, INC., et al., | ) | Adv. Proc. No. 10-51797 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 28, 34, 40, 50, |
| | ) | 52, 54, 55,56, 70, 71, 72, 74, 75, 82, |
| v. | ) | 86, 104, 106, 114, 115, 116, 121, 122, |
| | ) | 128, 129, and 130 |
| J. ARON & COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NEW DOMINION, LLC, | ) | Adv. Proc. No. 09-50978 |
| | ) | |
| Plaintiff, | ) | Related to Docket Nos. 61, 70, 79, 91, |
| | ) | 93, and 99 |
| v. | ) | |
| | ) | |
| BP OIL SUPPLY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-51070 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 86, 95, 106, |
| | ) | and 121 |
| v. | ) | |
| | ) | |
| BP OIL SUPPLY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

2

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-51518 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 41, 48, 49, 61, |
| | ) | 62, 68, 71, and 72 |
| v. | ) | |
| | ) | |
| CONOCOPHILLIPS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| HOPE PARTNERS, LLC | ) | Adv. Proc. No. 09-51519 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 39, 48, 49, 58, |
| | ) | and 70 |
| v. | ) | |
| | ) | |
| BP OIL SUPPLY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-51520 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 45, 54, and 60 |
| | ) | |
| v. | ) | |
| | ) | |
| J. ARON & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| SAMSON LONE STAR LLC., et al., | ) | Adv. Proc. No. 09-51941 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 52, 61, 70, 72, |
| | ) | and 87 |
| v. | ) | |
| | ) | |
| BP OIL SUPPLY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

3

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52818 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 108, 110, 116, |
| | ) | 123, 124, 132, 133, 139, 142, 154, |
| v. | ) | 160, 161, 164, and 170 |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52819 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 121, 122, 130, |
| | ) | 131, 137, 140, 152, 159, 160, 163, |
| v. | ) | and 169 |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52820 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 106, 109, 114, |
| | ) | 121, 122, 130, 131, 137, 140, 152, |
| v. | ) | 159, 160, 163, and 169 |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52821 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 122, 130, 131, |
| | ) | 137, 140, 152, 159, 160, 163, and 169 |
| v. | ) | |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52822 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 106, 110, 114, |
| | ) | 121, 122, 130, 131, 137, 140, 152, |
| v. | ) | 159, 160, 163, and 169 |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52823 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 121, 122, 130, |
| | ) | 131, 137, 140, 152, 159, 160, 163, |
| v. | ) | and 169 |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52824 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 106, 110, 114, |
| | ) | 121, 122, 130, 131, 137, 140, 152, |
| v. | ) | 159, 160, 163, and 169 |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, <u>et al.</u>, | ) | Adv. Proc. No. 09-52826 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 122, 130, 131, |
| | ) | 137, 140, 152, 159, 160, 163, and 169 |
| v. | ) | |
| | ) | |
| VALERO MARKETING, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

SAMSON RESOURCES COMPANY, et al.,   )     Adv. Proc. No. 09-52827
                                           )
        Plaintiffs,                )     Related to Docket Nos. 106, 110, 114,

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-52827 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 106, 110, 114, |
| | ) | 121, 122, 130, 131, 137, 140, 152, |
| v. | ) | 159, 160, 164, and 169 |
| | ) | |
| VALERO MARKETING, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-52828 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 122, 130, 131, |
| | ) | 137, 140, 152, 159, 160, 163, and 168 |
| v. | ) | |
| | ) | |
| VALERO MARKETING, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-52829 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 106, 110, 114, |
| | ) | 121, 122, 130, 131, 137, 140, 152, |
| v. | ) | 159, 160, 162, and 167 |
| | ) | |
| VALERO MARKETING, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-52830 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 111, 115, 122, |
| | ) | 123, 138, 141, 152, 159, 160, 163, |
| v. | ) | and 168 |
| | ) | |
| VALERO MARKETING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, et al., | ) | Adv. Proc. No. 09-52834 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 111, 115, 119, |
| | ) | 123, 126, 127, 135, 136, 142, 144, |
| v. | ) | 145, 157, 164, 165, 168, and 173 |
| | ) | |
| VALERO MARKETING, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SAMSON LONE STAR LLC., et al., | ) | Adv. Proc. No. 10-55970 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 3, 4, 5, and 8 |
| | ) | |
| v. | ) | |
| | ) | |
| CONOCOPHILLIPS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ARROW OIL & GAS, INC., et al., | ) | Adv. Proc. No. 10-51825 |
| | ) | |
| Plaintiffs, | ) | Related to Docket Nos. 29, 34, 41, 50, |
| | ) | 52, 55, 56, 70, 71, 72, 73, 74, 75, 82, |
| v. | ) | 86, 105, 107, 114, 115, 116, 121, 122, |
| | ) | 130, 131, and 132 |
| J. ARON & COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# OPINION[1]

Before the Court are four motions for summary judgment (collectively, the "Motions for Summary Judgment") filed by J. Aron & Company ("J. Aron"), BP Oil Supply Company ("BP"), ConocoPhillips Company ("Conoco"), and Plains Marketing, L.P. ("Plains"), respectively. Certain producers of oil and gas (the "Associated Producers"),[2] Samson Resources Company ("Samson"), Titan Energy, Inc. ("Titan"), Winstar Energy I, L.P. ("Winstar"), and Loren Gas, Inc. (together with Titan and Winstar, the "Titan Parties") all oppose the Motions for Summary Judgment and move for a continuance (collectively, the "Motions for a Continuance") pursuant

---

[1]    Pursuant to Federal Rule of Bankruptcy Procedure 7052, this Opinion constitutes the Court's findings of fact and conclusions of law.

[2]    The Associated Producers include Anstine & Musgrove, Inc.; Arrow Oil & Gas, Inc.; Beasley Oil Company; Blake Exploration, L.C.C.; Braden-Deem, Inc.; Calvin Noah, d/b/a Calvin Noah Oil Company; CMX, Inc.; Casey Musgrove Oil Company, Inc.; Central Operating, Inc.; Chaparral Energy, LLC; Clark Exploration Company; Coral Coast Petroleum, Inc.; Crawley Petroleum Corporation; DC Energy, Inc.; D.E. Exploration, Inc.; Davis Petroleum, Inc.; Daystar Petroleum, Inc.; DK Operating, Inc.; Double Eagle Exploration, Inc.; Drillers and Producers, Inc.; Duncan Oil Properties, Inc.; Dunne Equities, Inc.; Fairfield Oil & Gas Corporation; The Gloco, LLC; GMX Resources, Inc.; GRA EX, L.L.C.; Great Plains Energy, Inc.; Ground Development Company; Herman L. Loeb, LLC; H.I. Inc.; Hutchinson Oil Company; J&D Investments, LLC; Jack Exploration, Inc.; Kahan & Associates, Inc.; Keith F. Walker Oil & Gas Company, LLC; Kingery Drilling Company; KLM Exploration Company, Inc.; KLM Exploration Company, Inc.; Lance Ruffel Oil & Gas Corporation; Landmark Resources, Inc.; Lario Oil & Gas Company; L&J Oil Properties, Inc.; LD Drilling, Inc.; Little Bear Resources, Inc.; McCoy Petroleum Corporation; McGiness Oil Company of Kansas; Mesa Exploration Company, Inc.; Mid-Continent Energy Corporation; Molitor Oil, Inc.; Mull Drilling Company, Inc.; Murfin Drilling Company, Inc; Musgrove Energy, Inc.; Mustang Fuel Corporation; NYTEX Energy, LLC; Oil Company of America, Inc.; Oklahoma Oil & Gas Management, Inc.; Osborn Heirs Company, Ltd.; Pickrell Drilling Company, Inc.; Prolific Resources, LLC; RAMA Operating Company, Inc.; Randon Production Company, Inc.; Red Oak Energy, Inc.; Ritchie Exploration, Inc.; RJ Sperry Company; Ross Hoener, Inc.; Seeker, LLC; Short & Shorter, LLC; Snyder Partners; Stephens & Johnson Operating Company; Tempest Energy Resources, LP; Thoroughbred Associates, LLC; Tripledee Drilling Company, LLC; Tripower Resources, LLC; Viking Resources, Inc.; V.J.I. Natural Resources, Inc.; Veenker Resources, Inc.; Vess Oil Corporation; Vincent Oil Corporation; W.D. Short Oil Company, LLC; Wellco Energy, Inc.; Wellstar Corporation; White Exploration, Inc.; and White Pine Petroleum Corporation.

to Rule 56 of the Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.  For the following reasons, the Court will grant the Motions for a Continuance and will therefore adjourn consideration of the Motions for Summary Judgment.

## I.  **BACKGROUND**

On July 22, 2008 (the "Petition Date"), SemCrude and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  The Debtors' bankruptcy cases have been jointly administered.  In the summer leading up to the Petition Date, the Associated Producers, Samson, and the Titan Parties (collectively, the "Producers") sold and delivered millions of dollars worth of oil and gas to the Debtors.[3]  The Debtors then sold or transferred some of that oil and gas to certain downstream purchasers (collectively, the "Downstream Purchasers") including J. Aron, BP, Conoco, and Plains.  The Debtors did not pay for any of the oil and gas delivered in the seven weeks before the Petition Date.  During the pendency of the Debtors' consolidated bankruptcy cases, various Producers have asserted their right to payment based upon theories of recovery grounded in statutory lien claims and trust rights, either in actions commenced in other federal or state courts that have been subsequently removed and transferred to this Court, or via counterclaims in declaratory judgment actions initiated by Downstream Purchasers seeking declarations of the

---

[3]     For general background about the Debtors and their consolidated bankruptcy cases, see <u>Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)</u>, 407 B.R. 140, 143-48 (Bankr. D. Del. 2009).

Court that the tender of their net settlement amounts into the Debtors' estate has released them of any further obligation to the Producers on account of the oil and gas received from the Debtors.[4]

## II. <u>PARTIES' POSITIONS</u>

By the Motions for Summary Judgment, the Downstream Purchasers seek summary judgment that, as a matter of law, the Producers do not have any state law trust rights in the oil or gas sold to the Debtors, any statutory lien or security interest claims that may yield additional rights as against the Downstream Purchasers, any claims for conversion or unjust enrichment, or any remedies including disgorgement, damages, surrender, turnover, or an accounting.[5]  The Downstream Purchasers assert that this Court has already found that the Producers have no trust rights in the delivered oil and gas under the laws of Oklahoma.  The Downstream Purchasers argue that the Producers waived and released any potential trust rights and lien claims when they sold the oil and gas to the Debtors pursuant to standard industry contracts that included provisions indicating that the sales were free and clear of any encumbrances.

However, the Downstream Purchasers also concede that the Producers may have, at best, unperfected lien claims.  Specifically, they argue that any such liens held by the Producers under Texas, Kansas, New Mexico, or Oklahoma law are ineffective and unenforceable against the Downstream Purchasers, and any statutory liens under Oklahoma and New Mexico law have attached only to the proceeds of the delivered oil and gas, not to the goods themselves.

---

[4]      The full procedural history related to this litigation is extensive and complex, and it is not necessary for the Court to recapitulate it in its entirety for the purpose of disposing of the motions at bar.

[5]      The Producers have asserted trust rights and/or statutory lien claims under the laws of Oklahoma, Wyoming, New Mexico, Kansas, and Texas.

To the extent that the Producers have any statutory liens, however, the Downstream Purchasers argue that such claims are nonetheless derivative and subject to the contractual terms between the Downstream Purchasers and the Debtors.  Thus, the Producers' claims are limited to the amounts owed by the Downstream Purchasers to the Debtors, and are necessarily reduced by any setoff or netting arrangements between these parties.  Moreover, the Downstream Purchasers insist that the Debtors' confirmed plan of reorganization (the "Plan") provided for the release of all claims against the Downstream Purchasers on account of the delivered oil and gas, and that all claimants may look only to the net settlement funds tendered by the Downstream Purchasers into the Debtors' estates.

As an independent ground, the Downstream Purchasers contend that the recognition of the Purchasers' statutory lien claims would violate the U.S. Constitution because it would run afoul of the Dormant Commerce Clause by virtue of its interference with interstate commerce, and it would violate the Takings Clause if such a lien is deemed enforceable.

Finally, to the extent that the Court would recognize the Producers' liens as enforceable against the Downstream Purchasers, the Downstream Purchasers have asserted that they are buyers in the ordinary course and buyers for value as defenses against such lien claims.  In support of their affirmative defenses, the Downstream Purchasers argue that they acquired the oil and gas at issue for value and without knowledge of the Producers' alleged lien claims.

With respect to the Producers' other claims, the Downstream Purchasers argue that all such claims which are not based upon trust rights or statutory lien rights should be dismissed because these claims are predicated on the Producers' ability to demonstrate that they possess some right or interest in the oil or gas sold to the Debtors.  Since the Downstream Purchasers

contend that the Producers have no trust rights or lien claims, and thus no right or interest in the oil or gas transferred first to the Debtors and then to the Downstream Purchasers, any derivative claims must necessarily fail, too.

The Producers oppose the Motions for Summary Judgment on the ground that they are premature given the absence of meaningful discovery thus far.  The Producers assert that they have valid security interests in the oil and gas delivered to the Debtors.  However, the Producers contend that the resolution of their statutory lien claims turns not on whether the Producers' liens are perfected, but on whether the Downstream Purchasers have valid defenses against such claims.  The Producers dispute that the Downstream Purchasers were buyers in the ordinary course or buyers for value without knowledge of the Producers' lien claims.  The Producers also argue that their claims are independent, not derivative, of the Producers' causes of action against the Downstream Purchasers, and are therefore not subject to diminution on account of the Downstream Purchasers' setoff and netting arrangement with the Debtors pursuant to agreements between the Downstream Purchasers and the Debtors.  Finally, the Producers dispute that their statutory claims are unconstitutional, and that their non-statutory claims[6] are derived from and dependent upon their statutory claims.

In the alternative, the Producers move for a continuance under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 56, to conduct discovery on the factual questions at issue in the Motions for Summary Judgment.  Because the Producers contend that the resolution of their statutory lien claims turns on whether the Downstream Purchasers have valid defenses, the issue before the Court is an

---

[6]     The Court notes that the Downstream Purchasers have moved to dismiss the Producers' non-statutory claims and those motions are <u>sub judice</u>.

inherently factual one.  Specifically, the Producers contest that the Downstream Purchasers are either buyers in the ordinary course or buyers for value, which are questions of fact.  The Producers argue that the sophistication of the Downstream Producers and their purchasing experience in states that afford lien rights to producers of oil and gas to secure payment for their product allows for the inference that the Downstream Purchasers knew or should have known about the Producers' lien claims.  The Producers argue that additional evidence, obtained from deposition testimony specifically, would enable the Producers to further rebut the Downstream Purchasers' affirmative defenses.

The Downstream Purchasers object to the Motions for a Continuance on the ground the Motions for Summary Judgment seek declaratory relief as to purely legal, not factual, issues, such that further discovery and fact finding is unnecessary.  The Downstream Purchasers contend that the Producers have no enforceable rights, statutory or otherwise, against them and that the Producers have neither obtained evidence to the contrary nor identified discoverable information that would support their allegations.

This matter has been fully briefed and argued, and it is now ripe for decision.

### III.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

# IV. <u>DISCUSSION</u>

### A.    <u>Legal Standard for Summary Judgment</u>

Federal Rule of Civil Procedure 56(a),[7] made applicable to adversary proceedings by

Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The Supreme Court

has explained that an issue of material fact is genuine only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  The Supreme Court further explained that materiality is

determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome

of the suit under the governing law will properly preclude the entry of summary judgment."  Id.

The purpose of summary judgment is "to isolate and dispose of factually unsupported

claims or defenses."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment

may be properly granted "as a means of avoiding full-dress trials in unwinnable cases, thereby

freeing courts to utilize scarce judicial resources in more beneficial ways."  Mesnick v. Gen.

Elec. Co., 950 F.2d 816, 822 (5th Cir. 1991), cert. denied, 504 U.S. 985 (1992).

The movant bears the burden of establishing the absence of a genuine dispute as to a

material fact.  Celotex, 477 U.S. at 322-23 ("[A] party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

---

[7]    Federal Rule of Civil Procedure 56 was amended as of December 1, 2010.  Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c).  FED. R. CIV. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word— genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact.") (citing FED. R. CIV. P. 56).

     After the movant has made the requisite showing, the burden shifts to the non-movant to

establish that summary judgment is not warranted.  Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(c) requires that a

party "asserting that a fact cannot be or is genuinely disputed" has to support such an allegation

by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other materials," or by

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P.

56(c).  Thus, a party opposing a motion for summary judgment "must do more than simply show

that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and

instead must produce specific facts that establish the existence of a genuine dispute.  Id. at 587.

Without factual corroboration, "the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment."

Anderson, 477 U.S. at 247-48.

     In deciding a motion for summary judgment, the court must view all facts in the light

most favorable to the non-movant to determine whether the movant is nonetheless entitled to

judgment as a matter of law.  Anderson, 477 U.S. at 261 n.2; Morton Int'l, Inc. v. A.E. Staley

Mfg. Co., 343 F.3d 669, 680 (2003) (citation omitted).  Moreover, the court must draw all

inferences in favor of the non-movant and "where the non-moving party's evidence contradicts the movant's . . . the non-movant's must be taken as true." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994) (internal quotation marks omitted) (citation omitted). See also Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976) ("Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.").

In accordance with these standards, a motion for summary judgment may only be denied "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587 (citation omitted). Therefore, the Third Circuit Court of Appeals has held that "in all cases summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." Petruzzi's IGA Supermarkets v. Darling-Del. Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

**B.      Legal Standard for Requesting a Continuance**

The Third Circuit has stated that "[t]he court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir. 1988). If a party opposing summary judgment believes that more time is required for additional discovery, Federal Rule of Civil Procedure 56(d),[8] made applicable to

---

[8]      Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. Subdivision (d) now provides contains the standard for requesting a continuance or denial of a summary

adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, enables a court to defer consideration of a motion for summary judgment or deny such motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to the motion for summary judgment]." Fed. R. Civ. P. 56(d).  Similarly, the court may also "allow time to obtain affidavits or declarations or to take discovery," or "issue any other appropriate order." Id.  For this reason, "courts usually grant properly filed Rule 56(f) motions as a matter of course." St. Surin v. V.I. Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994).

The Third Circuit has interpreted Rule 56 to impose the "requirement that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Dowling, 855 F.2d at 139-40.  The Third Circuit has explained that "[t]he purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." Radich v. Goode, 886 F.2d 1391, 1394 (3d Cir. 1989) (citation omitted) (internal quotation marks omitted).  "Essentially, a party moving for postponement under Rule 56(f) must inform the district court why delay is needed before the motion can be properly considered." St. Surin, 21 F.3d at 1314.

---

judgment motion to allow for further discovery, which was previously stated in subdivision (f). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").  However, to avoid confusion, the Court will refer to this provision by its former moniker to the extent that relevant case law refers to it as such.

The Third Circuit has also declared that if the party opposing summary judgment seeks further discovery "where the facts [sought] are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). However, delay for the purpose of propounding further discovery is only appropriate when the facts sought are relevant to the disposition of the motion for summary judgment. In other words, a continuance is appropriate only if the "proposed discovery seems likely to produce evidence that would . . . materially affect[] the merits of the . . . pending motion for summary judgment." St. Surin, 21 F.3d at 1314.

## C.    Motions for a Continuance

The Producers argue that the Motions for Summary Judgment are premature because to adequately reply to these motions, the Producers need the time and opportunity to conduct additional discovery. The Third Circuit has stated that the court should resolve a motion requesting a continuance under Rule 56 before proceeding to the merits of a summary judgment motion. St. Surin, 21 F.3d at 1315. The Court will therefore address the Motions for a Continuance before proceeding to the Motions for Summary Judgment.

### 1.    Discovery Sought

The Producers seek to propound discovery relating to whether the Downstream Purchasers have viable affirmative defenses to the enforceability of the Producers' alleged liens on the oil and gas that the Downstream Purchasers obtained from the Debtors. Specifically, the Producers seek information about the value, if any, that the Downstream Purchasers gave in exchange for the delivered oil and gas, and the knowledge, if any, the Downstream Purchasers

had of the Producers' alleged liens.  The Producers also seek information that bears on whether the Downstream Purchasers took the oil and gas in good faith and without knowledge that the sale of such oil and gas violated any rights of the Producers.

Thus far, the Producers claim to have learned from documentary evidence and public sources that the Downstream Producers have had significant experience purchasing and trading oil and gas in Texas, Kansas, Oklahoma, among other states, and therefore were or should have been aware of the various statutory liens that attach to sold oil and gas as a matter of course.  In support of their allegation, the Producers have provided a non-exhaustive list of witnesses who are current or former employees of the Debtors or the Downstream Purchasers who would allegedly attest to the knowledge that the Downstream Purchasers had of the Producers' alleged lien claims.

### 2.    Relevance to Motions for Summary Judgment

The information that is sought by the Producers bears directly on the merits of the Motions for Summary Judgment.  Among other claims, the Downstream Purchasers allege that, as a matter of law, the Producers do not have any lien claims that are enforceable against the Downstream Purchasers.  In support of their assertions, the Downstream Purchasers rely on various rulings by this Court that have previously addressed the Producers' lien claims, specifically their priority in relation to liens held by the Debtors' secured lenders.  In a series of three opinions, the Court held that the secured lenders' duly perfected security interests arising under Article 9 of the Uniform Commercial Code ("U.C.C.") are superior to any lien claims and trust rights purportedly held by the Producers under the state laws of Texas, Kansas, and Oklahoma.  See Arrow Oil & Gas, Inc. v. SemCrude, L.P. (In re SemCrude, L.P.), 407 B.R. 112,

139 (Bankr. D. Del. 2009); <u>Mull Drilling Co., Inc., v. SemCrude, L.P. (In re SemCrude, L.P.)</u>,

407 B.R. 82, 110 (Bankr. D. Del. 2009); <u>Samson Res. Co. v. SemCrude, L.P. (In re SemCrude,</u>

<u>L.P.)</u>, 407 B.R. 140, 156-57 (Bankr. D. Del. 2009).  However, to date, the Court has not held that

the Producers categorically have no lien claims whatsoever in the oil and gas that was delivered

to the Downstream Purchasers by the Debtors, and the Producers are thus not barred from raising

the issue in the present litigation.  In fact, it is precisely this question concerning the existence of

the Producers' liens and their enforceability as against the Downstream Purchasers that is before

the Court in the Motions for Summary Judgment.

Under U.C.C. § 9-315(a)(1), the Producers' statutory liens are preserved unless or until

they are cut off by operation of law.  Moreover, to the extent that certain Producers such as J.

Aron argue that the Producers have waived their liens, this question is a factual one and subject

to dispute.  To the extent that the Court may find valid liens, whether perfected or unperfected,

that are held by the Producers, the Downstream Purchasers have asserted, among others, two

affirmative defenses.  First, the Downstream Producers argue that under U.C.C. § 9-317(b), they

took the delivered oil and gas free and clear of any liens as buyers for value and without the

knowledge of any existing liens.  Second, the Downstream Purchasers have raised the buyer in

the ordinary course defense under U.C.C. § 9-320 on the basis that they took such oil and gas in

good faith and without knowledge that the sale violated the Producers' rights.  The discovery that

the Producers now wish to propound is relevant to both defenses.

The Producers are seeking information concerning the value that the Downstream

Purchasers gave in exchange for the oil and gas, and evidence of the lack of value or insufficient

value would undercut the Downstream Purchasers' first defense.  Evidence that the Downstream

Purchasers were aware of the Producers' lien claims could make this defense equally infirm. The Producers argue that the Downstream Purchasers knew or should have known of the Producers' liens, which in either case presents an issue of material fact.  The Producers  allege that the Downstream Purchasers have constructive notice that an automatic security interest arises in favor of producers who are unpaid for product sold in Texas and Kansas.  The Producers also allege that the Defendants were aware of the Debtors' deteriorating financial condition, and of the consequential likelihood that liens on the delivered oil and gas would arise for unpaid product in favor of the Producers.

Similarly, the Producers seek to discover what knowledge, if any, the Downstream Purchasers may have had concerning the rights of the Producers.  Evidence that the Downstream Purchasers knew that the terms of the sale of oil and gas infringed upon the Producers' rights could weaken the Downstream Purchasers' buyer in the ordinary course defense.

The applicability of these affirmative defenses and the consequent enforceability of the Producers' alleged lien claims as against the Downstream Purchasers are disputed questions of fact.  The information sought by the Producers and their allegations as to the various elements of the Downstream Purchasers' defenses are relevant to the disposition of the Motions for Summary Judgment and to the litigation as a whole.  To the extent that the Producers obtain evidence to rebut the Downstream Purchasers' affirmative defenses, summary judgment as to the enforceability of the Producers' liens would not be appropriate because the Downstream Purchases would not be entitled to judgment in their favor.  To the extent that the Producers obtain evidence that is contrary to the evidence submitted by the Downstream Purchasers in

support of their defenses, there may be a genuine dispute as to material facts relevant to the litigation, specifically the Downstream Purchasers' defenses.

Moreover, the Producers contend that they are pursuing direct causes of action against the Downstream Purchasers that are independent of any claims the Producers may assert against the Debtors. Although the Debtors' Plan may have provisions addressing the rights of the Producers vis-à-vis the Debtors, the Plan appears to explicitly preserve downstream litigation: "No portion of any unpaid Secured First Purchaser Producer Claim is released, compromised, or discharged under this Plan solely for the purpose of any Downstream Claims against Downstream Purchasers, which Downstream Claims Producers shall be free to assert in courts of competent jurisdiction." Plan § 3.1(c); see also Confirmation Order ¶ 75.

### 3.    Reasons for Delayed Discovery

The Producers have explained that discovery in this litigation is still essentially in its infancy. In July 2010, the Court entered an order permitting the commencement of paper discovery only. However, this litigation has a protracted procedural history because of the intense disputes over the threshold issue of this Court's jurisdiction to even hear these proceedings, and the most recent motions addressing the jurisdictional issue were not disposed of until December 2010. Given that the Court so recently issued opinions and orders asserting jurisdiction over this litigation, summary judgment before the parties have had the opportunity for meaningful discovery would not be appropriate. By the time the Motions for Summary Judgment were filed, the Producers had only had a few short months to propound discovery. The Producers also have complained that many witnesses whose testimony is now sought via

deposition have been unwilling to provide affidavits.  However, the Court has not yet permitted parties to the litigation to take depositions.

Finally, the Court notes that in support of the Motions for a Continuance, the Producers, including Samson and the Titan Parties, have submitted the requisite affidavits delineating their reasons, as described above, for requesting the Court to continue the Motions for Summary Judgment.  Accordingly, the Court is satisfied that the Producers have supported their Motions for a Continuance sufficient for the Court to grant them.

**D.**      **Motions for Summary Judgment**

As discussed above, the Court is inclined to allow the Producers more time to conduct discovery, including depositions, to test the viability of the Downstream Purchasers' affirmative defenses.  For this reason, the Court will continue the Motions for Summary Judgment until more meaningful discovery has occurred sufficient to allow the Producers to adequately respond to such motions.  Accordingly, the Court does not reach the merits of the Motions for Summary Judgment at this time.

## V.  CONCLUSION

For the foregoing reasons, the Court will grant the Motions for a Continuance filed by the

Producers.  The Court will therefore adjourn the Motions for Summary Judgment sine die to

allow for meaningful discovery to occur with respect to information relevant to the Downstream

Purchasers' affirmative defenses, as identified by the Producers.  An appropriate Order follows.

BY THE COURT:


Dated:        Wilmington, Delaware
              June 20, 2011              _____
                                         Brendan Linehan Shannon
                                         United States Bankruptcy Judge

24